UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAUL EVERETT BROCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:13-cv-01577-DML-TWP |
| | ) | |
| MARK CASTEEL in his official capacity | ) | |
| as Sheriff, Montgomery County, Indiana, | ) | |
| BOARD OF COMMISSIONERS OF | ) | |
| MONTGOMERY COUNTY INDIANA, | ) | |
| | ) | |
| Defendants. | ) | |

## Order on Motion for Summary Judgment

Plaintiff Paul Everett Brock has brought this suit under 42 U.S.C. § 1983 for

unreasonable seizure and deprivation of liberty without due process of law. He

alleges his rights under the Fourth and Fourteenth Amendments were violated as a

result of his arrest under a warrant issued in error and his subsequent six-day

detention. Mr. Brock has named as defendants the office of the Montgomery County

Sheriff held by Sheriff Mark Casteel and the Montgomery County Board of

Commissioners ("the Sheriff" and "the Board," respectively).

Mr. Brock filed this action in the Montgomery County Circuit Court, and the

defendants removed the case to this court, where it was referred to the magistrate

judge upon consent of the parties. (Reference Order, Dkt. 2.) The office of the

Montgomery County Prosecutor, named as a defendant in the original complaint,

has already been dismissed from the suit on its motion. (Order on Motion to

Dismiss, Dkt. 27.) Mr. Brock also has concededly waived any claims under Indiana tort law for failure to give the requisite tort claims notice. (Order on Motion to Dismiss, Dkt. 28 at p. 2.) The Sheriff and the Board now move for summary judgment in their favor as to all the remaining federal claims against them.

## **The Material Facts**

The facts are recited here in the light most favorable to Mr. Brock, so long as he has presented some evidence to support them.

On Friday, September 9, 2011, Paul Everett Brock of Crawfordsville, Indiana, was arrested by an officer of the Crawfordsville Police Department, according to a warrant issued earlier that week by the Montgomery County Superior Court. (Plaintiff's Opposition Brief, Dkt. 41 at p. 1.) Mr. Brock was delivered to the Montgomery County Jail. (*Id.*) He was detained there until the following Thursday, September 15, when he was brought before a judge of the Superior Court and released. (*Id.* at p. 5.)

The warrant had been issued in error. On September 2, Paul *Matthew* Brock of *Frankfort*, Indiana, had failed to appear in the Superior Court for a plea hearing on misdemeanor charges. (Chronological Case Summary, Dkt. 42-3 at p. 4.) On September 6, a warrant was issued for the arrest of "Paul Everett Brock," specifying Paul Matthew Brock's Frankfort address but Paul Everett Brock's Social Security number and date of birth. (Warrant, Dkt. 46-3.) The record does not reveal whether the error is traceable to the law enforcement agency that originally provided the identifying information, or to the person who prepared the warrant.

On his arrival at the county jail on Friday, September 9, plaintiff Brock insisted that he was not the right man. He denied that there were any charges pending against him and that he had ever missed a court date. (Brock Affidavit, Dkt. 42-1 at ¶ 5.) He was shown the warrant, saw the incorrect information contained there, and maintained to his jailers, at least one of whom was personally known to him, that they had made a mistake. (*Id.* at ¶ 4.) On Monday, September 12, Mr. Brock renewed his complaints, asking his jailers when he would be brought before a judge. (*Id.* at ¶ 8.) He was told that "the court hadn't called for [him] yet." (*Id.*) This exchange was repeated on Tuesday and again on Wednesday. (*Id.*) During his detention, Mr. Brock was never informed of any procedure for lodging a formal complaint, and accordingly filed none. (*Id.* at ¶ 7.)

At Mr. Brock's initial hearing on Thursday, September 15—his first appearance before a judicial officer after nearly a week's detention—the deputy prosecutor admitted that the original information charging the failure to appear had misidentified the defendant and had subsequently been amended. (Transcript of Hearing 9/15/2011, Dkt. 42-2 at p. 4, lines 4–12.) The deputy prosecutor speculated that the warrant had been issued on the basis of the original, erroneous information. (*Id.* at lines 10–12.) The judge found that he had the wrong Paul Brock before him and ordered Mr. Brock's immediate release. (*Id.* at p. 6, lines 14–19.) The precise length of Mr. Brock's detention is somewhat difficult to determine, as it does not appear clearly from the record what times Mr. Brock was jailed on Friday or released on Thursday. The period may thus be reckoned at seven days, including

the days of his arrest and his release; six days, excluding the day of his release; or five days, excluding both the day of his arrest and of his release. Mr. Brock's submissions to the court vacillate between six days and seven. (*Compare* Complaint, Dkt. 1-1 at ¶ 6 (alleging seven days), *with* Plaintiff's Opposition Brief, Dkt. 41 at p. 2 (alleging six days).) For purposes of its analysis, the court will assume Mr. Brock's detention lasted six days.

<u>**Summary Judgment Standard**</u>

Summary judgment is granted when the moving party "shows that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The question is whether any reasonable trier of fact could find in favor of the nonmoving party on the record before the court, with all reasonable inferences from the record drawn in favor of the nonmoving party. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) (internal quotation and citation omitted); Local Rule 56-1(f)(1)(C). Where the nonmoving party bears the ultimate burden of persuasion, the moving party need not legally defeat or factually disprove every element of the claims against it. Rather, the moving party carries its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2012) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The burden then shifts to the nonmoving party to "go beyond the pleadings" and point to evidence that would allow a reasonable trier of fact to find in his favor. *Modrowski*, 712 F.3d at 1169 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

## Analysis

## I.    The Parties against Whom the Claims May Proceed

Before it analyzes Mr. Brock's substantive constitutional claims, the court will address whether those claims can be maintained against the particular defendants Mr. Brock has sued. Those determinations focus on the Sheriff's assertion of immunity and the Board's potential liability for the Sheriff's conduct.

### A.    The office of the Montgomery County Sheriff is not entitled to immunity.

The Sheriff argues that he is entitled to "quasi-judicial" absolute immunity for actions taken "pursuant to a valid court order . . . ." (Defendants' Supporting Brief, Dkt. 36 at p. 7.) The Sheriff seems further to suggest that, by acting reasonably and "in good faith," he is entitled to qualified immunity. (*Id.* at p. 11.) Whatever their merits,[1] these arguments are inapposite here.

As the Sheriff correctly notes, Mr. Brock has sued the Sheriff not in his personal capacity, but in his official capacity only. (*Id.* at p. 9.) The Supreme Court has acknowledged that this distinction "continues to confuse lawyers and confound lower courts," *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), but its application

---

[1]     In a roughly analogous context, the Seventh Circuit has noted that "an invocation of 'quasi-judicial' immunity begs the question. [Plaintiff] maintains that the Constitution requires jailers to investigate claims of misidentification even after a judge has remanded the suspect to custody. If that is true, then the judge's initial order awarding custody to the Sheriff's department can't be dispositive." *Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006). So it is with a court-issued arrest warrant when the resulting detention is challenged.

here produces no special difficulty. A suit against an officer in his official capacity "generally represent[s] only another way of pleading an action against [the] entity of which [the] officer is an agent." *Id.* (internal quotation and citation omitted). A suit against a county sheriff in his official capacity is a suit against the county sheriff's office, and thus against a local government entity.[2]

The question is not, then, whether Sheriff Casteel is immune from Mr. Brock's suit, but whether, as a unit of local government, his office is. It is not. In *Owen v. City of Independence*, the Supreme Court held that a municipality does not

---

[2]    Although claims like Mr. Brock's are often referred to as "municipal liability" claims, for the purposes of constitutional analysis, there is no difference between municipalities and other suable units of local government. *See Monell v. Department of Social Services*, 436 U.S. 658, 689 (1978) (referring to "municipalities and other local government units").

For the purposes of Mr. Brock's claims, whether this entity is the office of the Montgomery County Sheriff or Montgomery County itself matters not, although courts have reached different conclusions on this point. *Compare Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012) ("Holloway sued the Sheriff in his official capacity, which is effectively the same as having brought suit against the County of Delaware itself."); *Luck v. Rovenstine*, 168 F.3d 323, 325 (7th Cir. 1999) (Plaintiff's official capacity claim is "against the office of the [Kosciusko County] sheriff . . . , and we therefore understand the claim to be directed against the county."); *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998) ("We read [a suit against the Allen County sheriff] as a claim against the offic[e] of sheriff . . . — in other words, we understand such a claim as a suit against the municipality itself."); *with Estate of Drayton v. Nelson*, 53 F.3d 165, 167 (7th Cir. 1994) (upholding award of attorneys' fees for plaintiff's error in naming Marion County in addition to the Marion County Sheriff in his personal capacity) (citing *Radcliff v. County of Harrison*, 618 N.E.2d 1325, 1328 (Ind. Ct. App. 1993)); *Argandona v. Lake County Sheriff's Department*, 2007 WL 518799 at *3 (N.D. Ind. Feb. 13, 2007) (where county sued *eo nomine* for the sheriff's conduct, court granted Lake County's motion to dismiss and denied the Lake County Sheriff's).

enjoy any qualified immunity that may have shielded its officers personally.[3] 445

U.S. 622, 638 (1980). The Seventh Circuit has consistently applied the reasoning of

*Owen* to hold the same for absolute immunity, whether legislative, judicial, or

"quasi-judicial" in character, concluding that the considerations justifying them do

not apply in the local government context. *Capra v. Cook County Board of Review*,

733 F.3d 705, 711 (7th Cir. 2013); *Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th

Cir. 2006); *Reed v. Village of Shorewood*, 704 F.2d 943, 953 (7th Cir. 1983).

As local government entities, neither Montgomery County nor the office of

the Montgomery County Sheriff is immune from Mr. Brock's suit.

### B.    The Board is not liable for the Sheriff's acts and cannot be found liable in its own right.

In his complaint, Mr. Brock states that "the Board of Commissioners of

Montgomery County . . . are joined in this cause of action as the governmental body

for whom the Sheriff . . . [is an] agent." (Dkt. 1-1 at ¶ 2.) With its motion for

summary judgment, the Board argues that it "does not maintain any oversight or

supervision over employees of the Montgomery County Sheriff's Department . . . ."[4]

(Defendants' Supporting Brief, Dkt. 36 at p. 14.)

---

[3]     The defendants' authority on immunity, *Lawrence v. Conlon*, 1995 WL
153273 (N.D. Ill. Apr. 6, 1995), expressly restricts its discussion of qualified and
absolute immunity to personal claims: "Although the individual Defendants sued in
their personal capacities under *Bivens* are not entitled to sovereign immunity, these
Defendants may qualify for absolute judicial or quasi-judicial immunity." *Id.* at *2.

[4]     The Board argues further that Mr. Brock's "failure to respond substantively
to Defendants' motion for summary judgment as to the [Board] constitutes a waiver
of [any claims against it]." Defs.' Reply Supp. Summ. J. 3. The Board relies on

Mr. Brock's assertion that the Sheriff is an agent of the Board is incorrect. Under Indiana law, a county's board of commissioners serves as that county's executive. Ind. Code Ann. § 36-2-2-2. In this role, it has no authority over or responsibility for law enforcement within the county, including the operation of the county jail, which belongs exclusively to the county sheriff. The sheriff's is a constitutional office, Ind. Const. Art. VI, § 2, to which the care of the county jails is entrusted by statute. Ind. Code Ann. § 36-2-13-5(a)(7). The Board is responsible only for establishing a county jail and maintaining it in a reasonable condition. *See Robins v. Harris*, 740 N.E.2d 914, 919 (Ind. Ct. App. 2000) (holding that a board of county commissioners cannot be liable for a sheriff's tort).

If Mr. Brock named the Board only to allege claims against a local government entity, he has already accomplished this by naming the Sheriff in his official capacity, and the Board should be dismissed as a redundant defendant. *See* Analysis I.A. *supra.* And if Mr. Brock intends to allege vicarious liability of the Board for the Sheriff's acts, that theory is not available to him either. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978) (rejecting *respondeat superior* liability under section 1983).

---

*Teumer v. General Motors Corporation*, 34 F.3d 542 (7th Cir. 1994), but that case dealt only in passing with a plaintiff's waiver of a legal theory on appeal by failing to raise it in the district court. *Teumer*, 34 F.3d at 545–46. Because the Board is entitled to judgment as a matter of law for the reasons explained below, the court will not address its expansive theory of waiver.

Mr. Brock does not allege any injury for which the Board, as distinct from the Sheriff, may be responsible. For these reasons, summary judgment in favor of the Montgomery County Board of Commissioners is appropriate and is GRANTED.

## II.   Mr. Brock's Substantive Constitutional Claims

### A. Under *Monell*, Mr. Brock must show constitutional injury proximately caused by official local government policy.

Because a person is liable under Section 1983 only when it "subjects . . . or causes to be subjected" another to a deprivation of constitutional rights, 42 U.S.C. § 1983, a local government entity is liable only for constitutional injuries proximately caused by the operation of an official policy. *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *Powe v. City of Chicago*, 664 F.2d 639, 649 (7th Cir. 1981). To prove a *Monell* claim, therefore, a plaintiff must make two showings: deprivation of a constitutional right and the existence of a municipal policy that caused the deprivation.

The first question under *Monell* is whether the plaintiff can demonstrate some injury to his constitutionally-protected interests. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) ("[I]f no constitutional violation occurred in the first place, a *Monell* claim cannot be supported.") (citing *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cit. 2010)). In answering this question, "as a threshold matter, a court ought to review the presented claims and to determine the specific constitutional rights allegedly infringed. This determination identifies the

appropriate analytical lens through which facts are to be viewed." *Payne v. Churchich*, 161 F.3d 1030, 1039 (7th Cir. 1998) (internal quotation and citation omitted).

Mr. Brock's submissions refer variously to the "unlawful seizure of his person in violation of the Fourth Amendment" (Complaint, Dkt. 1-1 at ¶ 7), to his "arrest and incarceration . . . without due process" (Plaintiff's Opposition Brief, Dkt. 41 at p. 2), and finally to his "Fourth Amendment right to due process." (*Id.* at p. 3.) Despite this confusion, Mr. Brock's allegations can be identified within the framework set out by the Seventh Circuit for evaluating which constitutional protections attach at what point in the criminal process.

The Fourth Amendment governs the time before arrest and detention validated by a judicial determination of probable cause; the Due Process Clause of the Fourteenth Amendment governs the time between a probable cause determination and a determination of guilt or innocence. *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006). Put differently, claims for unlawful arrest and detention are to be analyzed "under the Fourth Amendment if the arrest was improper, or under the due process clause [of the Fourteenth Amendment] if the arrest was proper . . . ." *Patton v. Przybylski*, 822 F.2d 697, 700–01 (7th Cir. 1987); *see also Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992). Mr. Brock's claims will thus be analyzed as a claim for unreasonable seizure and false imprisonment under the Fourth Amendment, and a second, alternative claim for deprivation of liberty without due process of law under the Fourteenth Amendment.

The second question under *Monell* is whether the constitutional injury was caused by an official municipal policy. The "policy" for these purposes may take several forms. It may take the form of

> (1) an express policy that, when enforced, causes a constitutional deprivation, (2) a wide-spread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Guzman v. Sheahan*, 495 F.3d 852, 860 (7th Cir. 2007) (internal quotation and citation omitted). The policy need not be unconstitutional in itself, but when it is alleged that an otherwise constitutional policy operated to injure constitutionally-protected interests, some showing of fault is required. *City of Canton v. Harris*, 489 U.S. 378, 387–92 (1989) (rejecting the "contention that only unconstitutional policies are actionable under [Section 1983]" but imposing heightened "standards of fault and causation" in such cases).

The defendants argue that Mr. Brock's claims fail as a matter of law because he cannot show a policy, custom, or practice of the Sheriff. But in doing so, they focus solely on the circumstances of Mr. Brock's arrest. As explained in section II. B. below, they are correct on that point.

The defendants, however, advance no argument that Mr. Brock's post-arrest *detention* was not occasioned by a policy, custom, or practice, and as explained in section II. C. 2 *infra*, Mr. Brock has presented evidence that it was. Mr. Brock has thus presented evidence that would permit a reasonable factfinder to conclude that

11

the Sheriff had a policy or practice of "waiting for the court to call" without regard to an individual's insistence he is not the person sought by the warrant. Whether that policy or practice may have resulted in a constitutional injury is addressed in section II. C. 1 *infra.*

### B. Mr. Brock suffered no injury under the Fourth Amendment from his arrest on a facially valid, duly issued warrant supported by probable cause.

Because Mr. Brock was arrested on a warrant, both parties acknowledge that whether he suffered Fourth Amendment injury by unreasonable seizure turns on the warrant's validity. *See Powe v. City of Chicago*, 664 F.2d 639, 644 (7th Cir. 1981) (noting that *Baker v. McCollan*, 443 U.S. 137 (1979), forecloses a Fourth Amendment claim for mistaken arrest and detention on a valid warrant, but not a claim predicated on an invalid one). Mr. Brock contests the warrant's validity in conclusory fashion, asserting without argument that "[h]ere, there was no correct Warrant . . . ." (Plaintiff's Opposition Brief, Dkt. 41 at p. 7.) Defendants argue the warrant was valid but similarly fail squarely to address the question. Rather, they merely assert the arresting officer cannot be personally liable but do not grapple with the question of validity. (Defendants' Supporting Brief, Dkt. 36 at pp. 12–13.)

An arrest warrant is valid on its face when it is regular in form and "particularly describ[es] . . . the person . . . to be seized." U.S. Const. Amend. IV. The test of the particularity requirement is the long-established rule of *West v. Cabell* that an arrest warrant must "truly name [the intended arrestee], or describe him sufficiently to identify him." 153 U.S. 78, 84 (1894). A warrant does not sufficiently describe its subject when, for example, it contains only two names arbitrarily

selected from a number of aliases, *Powe*, 664 F.2d at 647–48, or when it names its subject only as "Ed." *Brown v. Patterson*, 823 F.2d 167, 169 (7th Cir. 1987) (citing *United States v. Doe*, 703 F.2d 745 (3d Cir. 1983)). By contrast, particularity is satisfied when the warrant gives an exact name or other sufficiently precise identifying information, such as physical appearance, date of birth, or address. *Johnson v. Miller*, 680 F.2d 39, 41 (7th Cir. 1982) ("For [defendant officer] the main thing was that the name was right."); *Powe*, 664 F.2d at 647 (describing other means of particularly identifying an arrestee where the name given is incorrect or uncertain).

To this extent, Mr. Brock's arrest warrant was valid. (*See* Warrant, Dkt. 46-3.) It was entirely regular in form. It gave a complete name, address, Social Security Number, and date of birth. Mr. Brock's challenge to the warrant's facial validity must rest on its mistake—on the fact that the address given was not his correct address, but that of Paul Matthew Brock. Mr. Brock calls attention to this fact repeatedly, as well as to the undisputed fact that the Sheriff had reason to know his correct address. (Complaint, Dkt. 1-1 at ¶ 2; Plaintiff's Opposition Brief, Dkt. 41 at p. 5; Brock Affidavit, Dkt. 42-1 at ¶ 6.) His reliance on these facts, however, is misplaced.

A warrant is not rendered facially invalid because it contains mistaken or discrepant information. If, on the basis of the warrant, the actual arrestee is reasonably mistaken for the intended arrestee, his right to be free from unreasonable seizure has not been violated. The cases relied on by the defendants

amply illustrate this principle. *See Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir 2006) (valid arrest despite discrepant middle initial and date of birth); *Brown,* 823 F.2d 167 (7th Cir. 1987) (valid arrest despite discrepant last name, date of birth, and address); *Patton,* 822 F.2d 697 (7th Cir. 1987) (valid arrest despite discrepant address and date of birth); *Johnson,* 680 F.2d 39 ( 7th Cir. 1982) (valid arrest despite naming the wrong suspect and despite discrepant race, height, weight, and date of birth).

The cases above are not, however, squarely on point. In those cases, the fit between the person suspected of a crime and the person named in the warrant was a tight one; it was the fit between the person named in the warrant and the person actually arrested that was challenged as too loose. Here, the situation is reversed.

The fit between the man described in the warrant and the man arrested was indeed tight. The arresting officer was entirely reasonable to think that the man he arrested was the man named in the warrant, as in fact he was. The single discrepancy between the Frankfort address listed on the warrant and the Crawfordsville address produced by Mr. Brock is, as the defendants argue, insufficient to attenuate the connection between the man described in the warrant and the man actually arrested. At the point of arrest, therefore, the warrant was valid on its face and reasonably executed by the arresting officer.

But the man described in the warrant and arrested on it was not actually suspected of a crime. Mr. Brock's claim to the warrant's invalidity may lie, not at the point of its execution, but at the point of its issuance as unsupported by

probable cause. The Montgomery County prosecutor did not, after all, have any reason to suspect *him* of a crime. For this reason, the facts of *Johnson v. Miller*, which involved a sufficiently descriptive arrest warrant mistakenly issued for the woman arrested on it, come closest to the facts here. *See* 680 F.2d at 40. There, however, no argument on probable cause was addressed by the court.

Even if Mr. Brock had expressly argued that the warrant was invalid for lack of probable cause when it was issued—which, beyond his recitation of the undisputed fact that the warrant was mistakenly issued in his name, he has not—it would not be sufficient to establish constitutional injury. Because Paul Matthew Brock had evidently failed to appear in court as ordered, the prosecutor in requesting the warrant for his arrest, the court in ordering the warrant, and the court clerk in issuing the warrant all were entirely reasonable to rely on the particular identifying information provided for the intended arrestee "by the law enforcement agency."[5] (Transcript of Hearing 9/15/2011, Dkt. 42-2 at p. 4, lines 10–11.)  If there is any reason why this should not be so, Mr. Brock has not articulated it. Such reasonable, even if ultimately mistaken, reliance will not defeat probable

---

[5]     A reasonable inference to be drawn in Mr. Brock's favor here is that "the law enforcement agency" is the Sheriff's office, though this is nowhere established by the factual record, and the defendants are silent on this point. Even if true, however, this fact alone would suggest no more than an isolated act of negligence. Someone undoubtedly made a mistake, but Mr. Brock has alleged no more than this. Even if the validity of the warrant could be attacked in this way, therefore, Mr. Brock would be unable to show anything rising to the level of an official municipal policy that caused the defect.

cause. *See Brinegar v. United States*, 338 U.S. 160, 174 (1949) ("In dealing with probable cause, . . . as the very name implies, we deal with probabilities.").

The court in *Johnson v. Miller* concluded:

> This is not to say that police officers can run amok, without fearing liability under section 1983, so long as they have a piece of paper in their hands called an arrest warrant. If the complaint in this case had alleged that [defendants] had procured a warrant that [they] knew to be based on mistaken identity, in an effort to deprive [the plaintiff] of her liberty or property, it might be a very different case . . . . But that is not the allegation.

680 F.2d at 42. Similarly, Mr. Brock's case might be very different if he alleged that the Sheriff's office had a custom or policy of providing incorrect identifying information to the Montgomery County courts that generated a sufficient number of mistaken arrests so as to put the parties on notice that warrants were being issued in error. *See, e.g., Hvorcik v. Sheahan*, 847 F. Supp. 1414 (N.D. Ill. Mar. 24, 1994) (granting summary judgment in favor of plaintiff class where sheriff's policy for recalling judicially quashed warrants found constitutionally inadequate). Mr. Brock has made no such claim, however, nor has he offered any evidence to support it.

Mr. Brock's arrest, while unjustified and unfair without question, was not unreasonable within the meaning of the Fourth Amendment. Because Mr. Brock has failed to establish constitutional injury, the defendants' motion for summary judgment is GRANTED as to his Fourth Amendment claim.

## C. The defendants are not entitled to judgment as a matter of law on Mr. Brock's Fourteenth Amendment claim.

Following the dictum of *Baker v. McCollan*, 443 U.S. 137 (1979), the Seventh Circuit has recognized that "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of liberty without due process of law." *Id.* at 145 (internal quotation and citation omitted). This lapse of time marks the transition between rights protected by the Fourth Amendment and rights protected by the Due Process Clause of the Fourteenth Amendment. *See Patton*, 822 F.2d at 700–01 (7th Cir. 1987).

Claims for such extended detention are analyzed under the rubric of substantive due process. In *Coleman v. Frantz,* 754 F.2d 719 (7th Cir. 1985), where the question was one of first impression, the court held that impermissibly extended detention, following a proper judicial determination of probable cause but without an initial appearance before a magistrate, offends "the concept of ordered liberty," is inconsistent with notions of "fundamental fairness" in the criminal process, and "shocks the conscience." *Id.* at 722 (citing respectively *Palko v. Connecticut*, 302 U.S. 319, 325 (1937); *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Rochin v. California*, 342 U.S. 165, 172 (1952)).

In reaching this conclusion, the court relied on the fact that "[a]lmost every element of a 'first appearance' under state statutes . . . serves to enforce or give meaning to important individual rights that are either expressly granted in the Constitution or are set forth in Supreme Court precedent." *Coleman*, 754 F.2d at

724. Included in this list of constitutional purposes are the Sixth Amendment rights to counsel and to be informed of the charges brought, the Fifth Amendment privilege against self-incrimination, and the Eighth Amendment right to nonexcessive bail. *Id.* An initial appearance serves to inform the accused of these rights and to give him the first opportunity to exercise them. To this list may be added, of course, the opportunity of the accused to demonstrate that he is not the person sought by the authorities. In all, "[t]he first appearance has such great value in protecting numerous rights that its denial presumptively disrupts those rights. Therefore, as a matter of constitutional prophylaxis, the denial of a first appearance offends the Due Process Clause." *Armstrong*, 152 F.3d at 573 (7th Cir. 1998).

The proper outlines of the inquiry are more difficult to delineate in the "less rigid and more fluid" context of substantive due process, *Armstrong*, 152 F.3d at 570 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) (internal quotation and citation omitted)), but the basic framework of analysis remains the same.

As to injury, although Section 1983 does not, on its own, define a culpability requirement, certain kinds of injuries must have been inflicted with a particular state of mind before they may rise to a constitutional level. *Daniels v. Williams*, 474 U.S. 327, 329-30. Violation of substantive due process is one kind of such injury. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). Where actual deliberation is practicable, the state of mind that will shock the judicial conscience is deliberate indifference, or conscious disregard of an obvious danger of constitutional injury.

*County of Sacramento*, 523 U.S. at 851 (1998); *Armstrong*, 152 F.3d at 576 (7th Cir. 1998). Beyond that, Mr. Brock must also demonstrate causation—that is, that the deliberately indifferent policy or practice produced the injury he complains of. Thus, in order to prove his claim, Mr. Brock must show that he suffered a constitutional injury that was proximately caused by the Sheriff's official policy or practice. In particular, he must show that he was harmed as the result of a policy that was deliberately indifferent to the danger of his unconstitutional detention.[6]

> **1. A reasonable factfinder could conclude that an innocent citizen's detention for six days without an appearance before a judicial officer and without any remedial efforts on the part of his jailers resulted from a deliberately indifferent municipal policy or practice.**

As an initial matter, Mr. Brock's detention must have been long enough to rise to a constitutional level. In assessing the impact of the length of an arrestee's detention, the *Coleman* court took as its starting point the case of *Baker v. McCollan*, 443 U.S. 137 (1979). There, the plaintiff-respondent was arrested on a facially valid warrant that mistakenly named him, rather than the intended arrestee, his brother, because his brother had forged a copy of the plaintiff's driver's

---

[6] The importance of distinguishing causation as an element of injury, from mere deliberate indifference underlying a policy, can be clarified hypothetically. If Mr. Brock's jailers, above and beyond the demands of a deliberately indifferent official policy, had taken steps to arrange for an initial hearing, he would not have been actually treated with deliberate indifference, and his claim would fail for lack of injury. If, by contrast, his jailers were deliberately indifferent to his claims in contravention of an otherwise appropriate official policy, the local government entity could not be said to have been the moving force behind the violation, and his claim would fail for lack of a policy that proximately caused his injury.

license. *Id.* at 140–41. The plaintiff was arrested on Saturday, December 30, and released on Tuesday, January 2. *Id.* at 141. In oft-cited dicta, the Court noted that "one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence," and that "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of liberty without due process of law." *Id.* at 144. Nonetheless, the Court was "quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation." *Id.* at 145.

Three days' detention over a holiday weekend, then, is an injury insufficient to rise to a constitutional level. In the Seventh Circuit, three days' detention before an initial appearance, even without further extenuating circumstances, is insufficient as well. *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1070 (7th Cir. 2012) (no due process violation where plaintiff, arrested without a warrant, received a determination of probable cause within forty-eight hours and an initial appearance within seventy-two hours of his arrest). Fifty-seven days' detention, on the other hand, is sufficient, as is eighteen days' detention. *See* respectively *Armstrong*, 152 F.3d at 576; *Coleman*, 754 F.2d at 723. A district court in the Seventh Circuit found constitutional injury after six days' detention where no inquiry as to the arrestee's identity was undertaken. *Johnson v. City of Chicago*, 711 F. Supp. 1465, 1470 (N.D. Ill. Apr. 20, 1989). Another found five days' detention sufficient in light of surrounding circumstances. *Griffin v. Sheahan*, 1999 WL

342400 at *7 (N.D. Ill. May 14, 1999) ("(1) [T]he detention is coupled with allegations of a custom of failing to investigate claims of mistaken identity or outdated warrants and (2) plaintiff was bonded out of detention rather than released because the defendants discovered their error.")

*Patton v. Przybylski*, 822 F.2d 697 (7th Cir. 1987), offers some insight as to how the length of the detention is to be measured and weighed. There, using a different system of accounting than had the *Baker* Court, the district court had read *Baker* to stand for the proposition that a detention of eight days does not violate due process. *Id.* at 700. Accordingly, the district court held that a detention lasting from the early morning hours of Thursday, November 1, until Wednesday, November 7, was not constitutional injury. Judge Posner, though affirming dismissal of the plaintiff's claims for lack of causation, took care to point out that this reading of *Baker* was incorrect, taking notice of the fact that, "[s]etting to one side . . . the weekend, and election day (as equivalent to New Year's day, the holiday that extended the weekend in *Baker*), there are still 2 complete weekdays during which [the plaintiff] was in jail without being brought before a judicial officer." *Id.*

Here, as in *Patton*, "[a]n innocent person was allowed to languish in jail for almost a week . . . ." *Id.* Following the calculus of that case, no holidays may be said to toll the period here. Discounting the two-day weekend, and further discounting the unknown hours of detention suffered by Mr. Brock on the Friday of his arrest and the Thursday of his release, still leaves three full days' detention unaccounted for. As Mr. Brock points out, the Sheriff has offered no evidence of special

circumstances that could justify Mr. Brock's detention for those three days. (Plaintiff's Opposition Brief, Dkt. 41 at p. 7.) Taking the *Baker* dicta together with Seventh Circuit precedent and practice, this court concludes that the detention of a mistakenly-arrested citizen for six days, of which at least three days are apparently wholly inexcusable, rises to a constitutional level.

As to whether Mr. Brock was actually handled with deliberate indifference by his jailers during the period of his incarceration, his uncontested submissions give rise to inferences in his favor. Beginning with his booking into the county jail on Friday, Mr. Brock protested his innocence to the transport officer. (Brock Affidavit, Dkt. 42-1 at ¶ 4.) Presumably expecting his detention to last only over the weekend, Mr. Brock renewed his protests on Monday, only to be informed that "the court hadn't called for [him] yet." (*Id.* at ¶ 8.) He protested on Tuesday and again on Wednesday before being brought before a judge on Thursday and released. (*Id.*) The failure of Mr. Brock's jailers to respond in any way to his "repeated protests of innocence," *Baker*, 443 U.S. at 145, gives rise to an inference of more than mere negligence, but rather of a conscious disregard of the obvious danger that they had jailed the wrong man.

The Sheriff alleges that there is "no record of Mr. Brock filing any type of grievance or complaint during his incarceration" (Casteel Affidavit, Dkt. 46-1 at ¶ 18), but that is misleading in its omission. Mr. Brock replies, again without dispute, that "no one ever told [him] that [he] could file a grievance or do anything to get the matter speeded up." (Brock Affidavit, Dkt. 42-1 at ¶ 7.) Thus, Mr. Brock's

jailers refused to go even so far as the jailers in *Armstrong*, who offered the plaintiff grievance forms to fill out but then refused to accept them once he had done so. *See* 152 F.3d at 579. Given that Mr. Brock's submitted evidence gives rise to an inference that his jailers took no steps to address his claims of mistaken identity, and given the absolute failure of proof by the defendants to the contrary, Mr. Brock's claim of deliberately indifferent treatment must survive summary judgment. *See Armstrong*, 152 F.3d at 580 ("For the guards to have continued to refuse Armstrong's complaints and for them to have continued only to check the will call list evinces the serious possibility of deliberate indifference to Armstrong's plight. Therefore . . . Armstrong survives summary judgment.")

The court will not go further. The sparse record in this case, the fact that Mr. Brock has not himself moved for judgment as a matter of law, and the fact that deliberate indifference "is a classic issue for the fact finder," *Armstrong*, 152 F.3d at 577, all counsel against finding deliberate indifference as a matter of law at this stage of the case. Nonetheless, Mr. Brock's uncontested submissions clearly would allow a reasonable trier of fact to find in his favor, and that is all he need show here.

2. **A reasonable factfinder could conclude that Mr. Brock's injury was proximately caused by a deliberately indifferent policy of the Sheriff's office.**

Establishing the existence of an official policy, so often an insurmountable hurdle for *Monell* plaintiffs, in this case follows from the Sheriff's own words. "The Montgomery County Sheriff's Department does not participate in any way in the scheduling of hearing for detainees at the Montgomery County Jail." (Casteel

Affidavit, Dkt. 46-1 at ¶ 16.) Instead, the Sheriff believes bringing detainees before a magistrate for an initial hearing is solely the responsibility of the *courts*: "The Judge sets the date when the hearing will occur." (*Id.* at ¶ 15.)

As did the Seventh Circuit in *Armstrong* and *Luck v. Rovenstine*, 168 F.3d 323 (7th Cir. 1999), this court "find[s] unconvincing the sheriff's attempt to shrug off his federal constitutional responsibilities toward detainees . . . ." *Luck*, 168 F.3d at 326. The county sheriff is the final policymaker for county jails in Indiana. State law places an affirmative duty on county sheriffs "to take care of the county jail and the prisoners there." Ind. Code Ann. § 36-2-13-5(a)(7). In the cases of jail detainees arrested on a warrant, such care must extend to the statutory command that such a person "shall be taken promptly for an initial hearing before the court issuing the warrant . . . ." Ind. Code Ann. § 35-33-7-4. *See also* Ind. Code Ann. § 35-33-2-2(a)(6) ("A warrant of arrest shall . . . command that the person . . . be arrested and brought before the court issuing the warrant, without unnecessary delay . . . ."); Warrant, Dkt. 46-3 ("[T]o the Sheriff of Montgomery County . . . [y]ou are hereby commanded to arrest Paul Everett Brock . . . [i]f he may be found in your County, so that *you* have him before the Judge of the Superior Court . . . .") (emphasis added). "In the final analysis, the sheriff is the custodian of the persons incarcerated in the jail, and as such, it is he who is answerable for the legality of their custody." *Luck*, 168 F.3d at 326.

The Sheriff's policy in regard to pretrial detainees arrested on a warrant is indistinguishable from the "will call" policy criticized in *Armstrong* and again in *Rovenstine*. Put differently, the Sheriff's expectation that it is incumbent in all circumstances on the courts, rather than on his office, to bring detainees before a magistrate represents a "failure to make policy in a situation that demands policy." *Armstrong*, 152 F.3d at 578.[7] This opinion should not be read to require the Sheriff to adopt a policy independent from or inconsistent with the courts' practices for holding initial hearings that would be routinely applied in all cases. Rather, this opinion addresses the Sheriff's practice of wholesale abdication to the court schedule without regard to special circumstances—like those alleged here.

As to whether the policy operates with deliberate indifference, the plainly obvious danger posed by such a policy, or nonpolicy, is that of detaining the wrong person for an impermissible length of time. "In a constitutional sense, how much more basic could it get—jails cannot confine people without the authority to do so."

---

[7] The defendants seek to distinguish *Armstrong* only by the length of detention involved there. (Defendants' Reply Brief, Dkt. 46 at p. 5) but that is of no moment here. *See* discussion Part II.C.1 *supra*. The defendants note that Armstrong "registered numerous complaints . . . ." (Defendants' Reply Brief, Dkt. 46 at p. 5.) If by this they mean numerous *written* complaints, it is unclear how the facts of *Armstrong*, where the plaintiff filled out written complaints which were never accepted, are any more egregious than those asserted here, where the plaintiff was never even notified of the existence of a grievance process. Indeed, it is not even evident on the record that a formal grievance process exists in the Montgomery County jail. The defendants note further that "assurances had been made to Armstrong that we would promptly go before a judge," (*id.*) but, because mere disappointed expectations cannot rise to a constitutional level, even assuming such assurances were not given here, it is unclear how this fact could be material.

*Armstrong*, 152 F.3d at 578. That bedrock principle has been announced repeatedly

as a matter of law by the Seventh Circuit. *See Luck*, 168 F.3d 323; *Armstrong*, 152

F.3d 564; *Coleman*, 754 F.2d 719. What saved the sheriff's "will call" policy in

*Armstrong* from a determination of deliberate indifference was the existence of a

formal complaint procedure. *Armstrong*, 152 F.3d at 579. Here, although the Sheriff

asserts that there is no record of Mr. Brock's filing a formal complaint, there is no

evidence that Mr. Brock was ever notified of the opportunity to do so, and Mr. Brock

has testified that he was not. Because the Sheriff nowhere alleges that such a

complaint policy actually exists, there is no basis for assuming that it does—at least

none strong enough for the Sheriff to prevail on summary judgment.

Again, however, for the reasons set out above, the court does not find

deliberate indifference as a matter of law. But Mr. Brock has presented evidence of

an official policy, the type of which has repeatedly been found to be deliberately

indifferent the constitutional rights of pretrial jail detainees. Accordingly, the

defendants' motion for judgment as a matter of law as to Mr. Brock's Fourteenth

Amendment claim is DENIED.

## Conclusion

The Board's motion for summary judgment is GRANTED as to all claims. The

Sheriff's motion is GRANTED as to Mr. Brock's Fourth Amendment claim and

DENIED as to his Fourteenth Amendment claim.

So ORDERED.

Date:  May 28, 2015

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system